9 N.J. Super. 605 (1950)
76 A.2d 44
HENRY A. GENTZEL AND NAZARE MEMORIAL HOME, INC., A CORPORATION OF NEW JERSEY, PLAINTIFFS,
v.
BOARD OF EMBALMERS AND FUNERAL DIRECTORS OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided October 16, 1950.
*606 Mr. Sidney M. Schreiber for the plaintiff (Messrs. McKeown & Schreiber, attorneys).
Mr. Joseph Lanigan, Deputy Attorney-General, for the defendant (Mr. Theodore D. Parsons, Attorney General of New Jersey, attorney).
STANTON, J.S.C.
As a result of stipulations made at the pretrial conference and at the trial, there remains only the action of Nazare Memorial Home, Inc., for the determination of its right to engage in the business of embalming and funeral directing in this State. The sole issue now is: "Whether the said corporation was and is a subterfuge whereby the said Joseph J. Nazare is attempting to practice and engage in business as embalmer and funeral director."
Joseph J. Nazare was employed for many years as an apprentice by his late brother Peter F. Nazare who conducted his business under the name Nazare Memorial Funeral Home. Following the latter's death in 1944, Joseph Nazare obtained from defendant permission to carry on the business of his late brother upon the condition that he qualify himself to take defendant's examination for license as an embalmer and funeral director and that he pass such examination. Several extensions of time were granted him and when he failed to take the examination in April, 1949, he was ordered to cease operations as of May 1, 1949. Thereafter, Nazare brought an action against the defendant, seeking among other things an injunction restraining the enforcement of the cease and desist order against him. Nazare v. Board of Embalmers, 4 N.J. Super. 567 (Ch. 1949). Shortly after his application *607 for an interlocutory injunction had been denied in July, 1949, he acquired control of the stock of the plaintiff corporation, whose name then was Spinelli Home for Funerals. The name of the corporation was promptly changed to its present form and defendant was notified, on or about August 1, 1949, that plaintiff would conduct business at 403 Ridge Road in Lyndhurst with a licensed embalmer and funeral director in charge. It is to be noted that this is the same location in which Joseph Nazare had conducted the business known as Nazare Memorial Funeral Home during the previous five years. Defendant board refused to recognize plaintiff's right to carry on and took steps to prevent it from doing so.
R.S. 45:7-16 contains a provision prohibiting generally the carrying on of the business of embalming or funeral directing by a corporation except as provided in R.S. 45:7-17, as follows:
"Any corporation which was, on March twenty-eight, one thousand nine hundred and twenty-seven, authorized under earlier laws of this state to carry on the business of embalming or funeral directing in such a way that, under the law, its right to do so cannot be entirely forbidden, may continue such business under such reasonable rules and regulations as the board may determine with respect to the management and control of the actual operation of embalming or funeral directing by persons holding licenses granted by the board and with respect to such other matters as the board may determine. The board may, by rule or regulation, permit the continuance of the business of a deceased embalmer or funeral director to whom a license shall have been issued under the provisions of this chapter, under the supervision of a person duly licensed by the board for the benefit of the widow or of the estate or of persons interested in the estate of such decedent for such time and in such manner as the board shall determine. Every person or corporation violating any of the foregoing provisions of this section or section 45:7-16 of this title shall be subject to a penalty of one hundred dollars for the first offense, and two hundred dollars for the second and each subsequent offense."
The defendant board promulgated Rule 34 to implement the above legislative enactment and it is as follows:
"34. From and after the adoption of these rules and regulations, in all places where a corporation is now authorized under the laws of *608 this State to carry on the practice of embalming and funeral directing in such a way that under the law its right to do so cannot be entirely forbidden, such practice shall be conducted under the following rules: The actual operation of the practice shall be under the direction and supervision of a person holding a license issued by this board, and said person so holding a license shall personally handle all work emanating from said practice, and shall devote his entire time to the practice which he is supervising, and shall not conduct an establishment of his own nor supervise any other establishment nor be associated in any manner whatsoever with any other establishment of embalming and funeral directing.
"No unlicensed person financially interested in the corporation, or unlicensed person whose family name may appear in the corporate title, shall actively participate in any capacity in the actual preservation, preparation or disposal of the dead; the name of the person holding a license, supervising said practice, shall be conspicuously displayed and kept in a conspicuous place at the entrance of the place where the practice is being conducted, and shall also be printed on the stationery and any advertising matter sponsored by said corporation; formal notice of the selection of a duly licensed person for the purpose of so supervising the practice shall be sent to the board and, if after due investigation, the board is of the opinion that it is bona fide, the designation shall be approved in writing by the board. Any person holding a license and supervising such practice, who shall fail to comply with the rules herein set forth shall be summarily proceeded against and his license may be revoked. The physical assets of the practice of an embalmer or funeral director may be owned by a corporation, but in no case shall the practice be carried on in the name of or operated by the corporation."
Among the stipulated facts are these: that plaintiff corporation having been on March 28, 1927, authorized by law to carry on the business of embalming and funeral directing was entitled to continue such business by virtue of R.S. 45:7-17; that Nazare acquired control of the corporation in July, 1949; that a duly licensed person was always employed by plaintiff to manage and control the actual operation of embalming and funeral directing; and that no acts prohibited by statute or rule of the board were performed by Nazare for or in behalf of plaintiff.
This question suggests itself: "If plaintiff functions in accordance with law and the rules of defendant, does it matter that Nazare, a non-licensee, is its principal stockholder?" Nowhere in the statute and the rules promulgated by defendant *609 is there to be found any requirement that an officer or a stockholder, large or small, of a corporation qualifying under R.S. 45:7-17, shall hold a license as an embalmer or funeral director.
Defendant calls attention to the well known maxims that "equity looks to the intent rather than to the form" and "equity regards substance rather than form," and cites Stockton v. Central R.R. Co., 50 N.J. Eq. 52 (Ch. 1892), and the cases following it that hold that in a proper case equity will pierce the corporate veil to examine the substance rather than the form of an act or transaction. But defendant's contention that plaintiff's corporate form is a mere disguise, behind which Nazare is attempting to practice and engage in business as an embalmer and funeral director, must fail because of the utter lack of proof that Nazare has performed or intends to perform acts which may be done lawfully only by a licensed embalmer or a licensed funeral director. The defendant seems to assume that because of his stock control of the plaintiff corporation Nazare will of necessity engage in activities proscribed by the rule that no unlicensed person "shall actively participate in any capacity in the actual preservation, preparation or disposal of the dead." There must be proof of such activities and they cannot be inferred from Nazare's ownership of the controlling stock interest.
The last sentence of Rule 34 is as follows: "The physical assets of the practice of an embalmer or funeral director may be owned by a corporation, but in no case shall the practice be carried on in the name of or operated by the corporation." This is repugnant to the express provisions of R.S. 45:7-17 and it is therefore void in so far as it purports to affect plaintiff.
It is concluded therefore that ownership of a controlling interest in plaintiff corporation by Nazare does not deprive it of its right under R.S. 45:7-17 to carry on the business of embalming and funeral directing in the manner therein prescribed.